UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20 CR 399 RLW |
| | ) | |
| JUSTIN CANNAMORE, | ) | |
| | ) | |
| Defendant. | ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

## 1. PARTIES:

The parties are the defendant Justin Cannamore, represented by defense counsel Kevin Gau,

and the United States of America (hereinafter "United States" or "Government"), represented by

the Office of the United States Attorney for the Eastern District of Missouri (USAO). This

agreement does not, and is not intended to, bind any governmental office or agency other than

the United States Attorney for the Eastern District of Missouri. The Court is neither a party to

nor bound by this agreement.

## 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the

defendant's voluntary plea of guilty to Counts 2 and 3 of the charge, the Government agrees to

move for the dismissal as to the defendant of Count 1 at the time of sentencing. Moreover, the

United States agrees that no further federal prosecution will be brought in this District relative to

the defendant's possession of firearms on May 31, 2019 and June 5, 2020 and attempting to burn

1

the 7-Eleven at 201 N. 17th Street, St. Louis, Missouri on June 1, 2020, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree to jointly recommend a sentence of 36 months.

**3. ELEMENTS:**

The defendant admits to knowingly violating Title 18, United States Code, Section 922(g)(1) (Count 2) and Title 18, United States Code, Section 231(a)(1) (Count 3), and admits there is a factual basis for the plea and further fully understands that the elements of the crimes are:

<strong>Count 2</strong>

*One*, the defendant had been convicted of a crime punishable by imprisonment for more than one year (a felony);

*Two*, thereafter the defendant knowingly possessed a firearm, that is

*Three*, at the time the defendant knowingly possessed a firearm, he knew he had been convicted of a felony crime;

*Four*, the firearm was transported across a state line at some time before defendant's possession of it.

<strong>Count 3</strong>

*One*, the defendant demonstrated to another person the application of a technique capable of causing injury to persons,

*Two*, the defendant did so intentionally; and

*Three*, the defendant knew that the technique would be unlawfully employed in furtherance of a civil disorder which, to a degree, adversely affected commerce.

2

## 4. __FACTS:__

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

On or about May 25, 2020, George Floyd was killed after he was forcibly restrained by police officers in Minneapolis, Minnesota. Mr. Floyd's death sparked days of civil unrest in Minneapolis and elsewhere. Within days, protests spread to multiple major cities, including St. Louis, Missouri. Many of these protests began peacefully but devolved into violence, vandalism, and looting. In St. Louis, the violence and rioting culminated on the evening of June 1, 2020. Protests began in front of the St. Louis Metropolitan Police Department at 1915 Olive Street and moved down Olive Street towards the area of a 7-Eleven located at 201 N. 17th Street, in the City of St. Louis. After some time, a large crowd gathered around the 7-Eleven where individuals smashed windows, broke into an ATM machine, and eventually set it on fire. These acts of violence caused an immediate danger of, and resulted in damage to, the 7-Eleven building, meeting the definition of civil disorder as that term is defined in Title 18, United States Code, Section 232(1).

On the night of June 1, 2020, Defendant Cannamore drove a black Jeep Renegade with a fictitious Missouri license plate to the 7-Eleven. A significant crowd had gathered at the site at the time and had begun looting and destroying the building. Amongst the looters, was a lady who was inartfully attempting to pour lighter fuel on the 7-Eleven building. Defendant took the bottle of lighter fuel from the woman and used it with a more liberal dispersal pattern, demonstrating to the woman a more effective technique in the application of the lighter fuel. Defendant also ignited a fire in the first aisle of the 7-Eleven, which was soon after extinguished

3

when a firework exploded in the same location. The lady then retook the lighter fuel and began her own attempts to light the 7-Eleven on fire.

On June 5, 2020, St. Louis County Police Officers Lally and Martin, while on patrol in the early morning hours, observed a black Jeep Renegade, driving north on Halls Ferry Road. The officers determined that the Jeep displayed a fictitious Missouri license plate, and as the Jeep turned onto Woodwind Drive, pulled it over. Defendant Cannamore was the driver and sole occupant of the vehicle. As the officers noticed the strong smell of marijuana, they conducted a search of the vehicle. In the rear pocket of the front passenger seat, the officers discovered a Charter Arms, Pathfinder .22 revolver, bearing serial number 129997. On scene records checks revealed that the firearm was stolen and that defendant had a prior felony conviction.

In a post-arrest interview, defendant admitted to possessing the revolver and knowing that he couldn't legally possess the weapon due to his prior conviction.

The Charter Arms firearm Defendant possessed on June 5, 2020 has been determined by an expert firearms examiner to have been manufactured outside the State of Missouri, and, therefore, that firearm has been transported across state lines and in interstate commerce prior to or during Defendant's possession. That Charter Arms firearm could and can expel a projectile by the action of an explosive and is, therefore, a "firearm" as defined under federal law.

Prior to June 5, 2020, Defendant had been convicted of at least one felony crime punishable by imprisonment for a term exceeding one year. At the time Defendant possessed the aforementioned Charter Arms firearm, he knew he had been convicted of a crime punishable by a term of imprisonment exceeding one year.

## 5. **STATUTORY PENALTIES**:

The defendant fully understands that the maximum possible penalty provided by law for the crimes to which the defendant is pleading guilty are for Count 2 imprisonment of not more

than 10 years, a fine of not more than $250,000, or both such imprisonment and fine. As for

Count 3, the maximum possible penalty is imprisonment of not more than 5 years, a fine of not

more than $250,000, or both such imprisonment and fine. The Court may also impose a period

of supervised release of not more than 3 years on both counts.

**6. U.S. SENTENCING GUIDELINES: 2018 MANUAL:**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines

and the actual sentencing range is determined by both the Total Offense Level and the Criminal

History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total

Offense Level provisions that apply.

**a. Chapter 2 Offense Conduct:**

**Count 2 (Group 1)**

**(1) Base Offense Level:** The parties agree that the base offense level is 14, as

found in Section 2K2.1(a)(6).

**(2) Specific Offense Characteristics:** The parties agree that the following

Specific Offense Characteristics apply: 2 levels are added pursuant to Section 2K2.1(b)(4), as the

firearm was stolen.

**Count 3 (Group 2)**

**(1) Base Offense Level:** The parties agree that the base offense level is 20,

pursuant to Section 2K1.4(a)(2) cross-referenced from Section 2X5.1, as the offense involved the

attempted destruction of a structure.

**(2) Specific Offense Characteristics:** The parties agree that no Specific Offense

Characteristics apply.

5

**b.  Chapter 3 Adjustments:**

    **(1) Grouping**

Count 3 (Group 2), at a level 20, has a higher offense level than Count 2 (Group 1), at level 16.  As Count 2 is 4 levels less serious than Count 3, 2 levels are added to Count 3's offense level pursuant to Section 3D1.4(a).

    **(2)  Acceptance of Responsibility:**  The parties agree that two levels should be deducted pursuant to Section 3E1.1(a) because the defendant has clearly demonstrated acceptance of responsibility.  Further, the USAO, under the facts known at the present, will make a motion at the time of sentencing for an extra 1 level reduction based on defendant's notification to the USAO of the intention to plead guilty.  The parties agree that the defendant's eligibility for this deduction is based upon information presently known.  If subsequent to the taking of the guilty plea the USAO receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the USAO may decide not to file such a motion, without violating the plea agreement.

    **c.  Estimated Total Offense Level:**  The parties estimate that the Total Offense Level is 19.

    **d.  Criminal History:**  The determination of the defendant's Criminal History Category shall be left to the Court.  Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category.  The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

    **e.  Effect of Parties' U.S. Sentencing Guidelines Analysis:**  The parties agree that the Court is not bound by the Guidelines analysis agreed to herein.  The parties may not have foreseen all applicable Guidelines.  The Court may, in its discretion, apply or not apply any Guideline

despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## 7.  WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a.  Appeal:**  The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1)  Non-Sentencing Issues:**  The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2)  Sentencing Issues:**  In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range

**b.  Habeas Corpus:**  The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c.  Right to Records:**  The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records

7

pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8.  OTHER:**

    **a.  Disclosures Required by the United States Probation Office:**  The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

    **b.   Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**  Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

    **c.  Supervised Release:**  Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed.   These conditions will be restrictions on the defendant to which the defendant will be required to adhere.  Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release.  The defendant understands that parole has been abolished.

    **d.  Mandatory Special Assessment:**  Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which the defendant agrees to pay at the time of sentencing.  Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e.  Possibility of Detention:**   The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f.  Fines and Costs of Incarceration and Supervision:**   The Court may impose a fine, costs of incarceration and costs of supervision.  The defendant agrees that any fine imposed by the Court will be due and payable immediately.

**g.  Forfeiture:**   The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States.  The defendant agrees that said items may be disposed of by law enforcement officials in any manner including the firearms seized from defendant on May 31, 2019 and June 5, 2020.

## 9.  ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses.  The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

9

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

## 10.  VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11.  CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any

term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the government, at its option, may be released from its obligations under this agreement. The government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

6/24/21
Date

JOHN J. WARE, #40880MO
Assistant United States Attorney

Date

JUSTIN CANNAMORE
Defendant

6/24/2021
Date

KEVIN GAU   #51595MO
Attorney for Defendant

11